UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ARTHUR ALONZO CURETON,
A1 CONNECTION, LLC
and TIAJAH TREVON CURETON,

                    Plaintiff,

                                                    Case No. 23-cv-551-pp

        v.

ABC NETWORK, DISNEY,
APPLE, INC. and HULU,

                    Defendants.

**ORDER GRANTING PLAINTIFFS' MOTIONS TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NOS. 2, 7), DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 3), SCREENING COMPLAINT AND ORDERING PLAINTIFFS TO FILE AN AMENDED COMPLAINT**

On May 1, 2023, plaintiffs Arthur Cureton and Tiajah Cureton—representing themselves—filed a complaint on behalf of themselves and their "parent company," "A1 Connection LLC." Dkt. Nos. 1 (Complaint); 1-1 (Tiajah Cureton's signature page). As best the court can tell, the plaintiffs claim that defendants "ABC Network, Disney, Apple Inc., and Hulu" infringed on their intellectual property. Id. at 1-5. The individual plaintiffs filed requests to proceed without prepaying the filing fee, dkt. nos. 2, 7, and Arthur Cureton filed a motion for court-appointed counsel, dkt. no. 3. Because the court needs more information to decide whether the plaintiffs have stated a claim, the court will require the plaintiffs to file an amended complaint and will deny without prejudice Arthur Cureton's motion to appoint counsel.

1

# I. Motions to Proceed Without Prepaying the Filing Fee (Dkt. Nos. 2, 7)

To allow the plaintiffs to proceed without prepaying the filing fee, the court first must decide whether the plaintiffs can pay the fee; if not, it must determine whether the lawsuit is frivolous, malicious, or fails to state a claim upon which relief can be granted. 28 U.S.C. §§1915(a) and 1915(e)(2)(B)(i).

While the plaintiffs filed separate motions to proceed without prepaying the filing fee, dkt. nos. 2, 7, their motions are nearly identical. The plaintiffs state on their respective motions that they are not employed, not married and do not have any dependents. Dkt. Nos. 2 at 1; 7 at 1. Under the heading, "Income," both plaintiffs state that they receive $1,900 in "SSI," dkt. nos. 2 at 2; 7 at 2 (although on his/her form Tiajah Cureton indicates that his/her $1,900 in monthly income is "combined with payee, Arthur Cureton," dkt. no. 7 at 2). It appears that perhaps the plaintiffs split the $1,900 in monthly Supplemental Security Income payments.

Under the heading, "Expenses," both plaintiffs state that they have $313.55 in monthly car payments, $500 in credit card payments and $1,880 in "other household expenses." Dkt. Nos. 2 at 2; 7 at 2. Arthur Cureton also states that he makes monthly payments of $47 in "back child support." Dkt. No. 2 at 2. Under "other *monthly* expenses," both plaintiffs state that they each pay $670 for "auto insurance," $250 for "business internet," and $200 for "food, fuel." Dkt. Nos. 2 at 3; 7 at 3. Although the above figures total more than $3,300, both plaintiffs claim $1,900 in "total *monthly* expenses." Dkt. Nos. 2 at 3; 7 at 3.

Under the heading, "Property," both plaintiffs state that they own a "2017 Ford Explorer Police AWD" and, under "approximate current value," both state, "Finiced [sic], Ballance [sic] $9,000." Dkt. Nos. 2 at 3; 7 at 3. While it is unclear

2

whether this means that the car is worth $9,000, or that the plaintiffs still owe $9,000 in car payments, the court will assume it's the latter, given that both plaintiffs state that they pay $313.55 in monthly car payments. As for "cash or checking, savings, or other similar accounts," Arthur Cureton reports that he has a bank account balance of "-$300," dkt. no. 7 at 3, and Tiajah Cureton states that he/she has "under $50," dkt. no. 2 at 3. As for other property, Arthur Cureton states that he owns "Real Property: Media Platforms: Musical Works: BMI Catalog: Copyright Materials [and] Trademark Material[,]" but he does not approximate the value of that property. Dkt. No. 2 at 4. Under the heading, "Other Circumstances," Arthur Cureton says that "from February 2022 to current date, 2023[,] [he] ha[s] been homeless, living in, and producing content within [the] vehicle [he shares with his co-plaintiff, Tiajah Cureton]." Id. Under "Other Circumstances," Tiajah Cureton says, "Same conditions, as stated by A-1 connections LLC the intellectual property owner," dkt. no. 7 at 4, presumably referring to the conditions listed on his/her co-plaintiff's form.

Based on the information in the two requests, the court concludes that the plaintiffs do not—either individually or jointly—have the ability to pay the filing fee. The plaintiffs still are responsible for paying the filing fee over time. Robbins v. Switzer, 104 F.3d 895, 898 (7th Cir. 1997); see also Rosas v. Roman Cath. Archdiocese of Chi., 748 F. App'x 64, 65 (7th Cir. 2019) ("Under 28 U.S.C. § 1915(a), a district court may allow a litigant to proceed 'without *prepayment* of fees,' but not without ever paying fees.") (emphasis in original). When a court grants a motion allowing plaintiffs to proceed without *pre*paying the filing fee, it means only that the plaintiffs are not required to pay the full filing fee up front; the plaintiffs still owe the filing fee.

## II.    Screening

The court next must decide whether the plaintiffs have stated claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). To state a claim under the federal notice pleading system, a plaintiff must provide a "short and plain statement of the claim" showing that the plaintiff is entitled to relief. Federal Rule of Civil Procedure 8(a)(2). A plaintiff does not need to plead every fact supporting the alleged claims; a plaintiff needs only to give the defendant fair notice of the claim and the grounds upon which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). At the same time, the allegations "must be enough to raise a right to relief above the speculative level." Id. The court must liberally construe the allegations of a complaint filed by self-represented plaintiffs. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

### A.    Facts Alleged in the Complaint

The plaintiffs have sued "ABC Network, Disney, Apple Inc, and Hulu." Dkt. No. 1 at 1. The complaint is divided into two parts: the first part spells out plaintiff Arthur Cureton's allegations, id. at 3-4, the second, plaintiff Tiajah Cureton's allegations, id. at 5-7.

Arthur Cureton's allegations are as follows:

[Apply to all defendant's listed in this complaint] Plaintiff: Owner and president, Arthur Alonzo Cureton: A-1 connections LLC, Creater of "Digital-Media Streaming; Platforms, and all it's intellectual property. First Publised in 2015, 2015, to curent date 2023. All A-1 connection's, Brands are based on media streaming. Trademark, with the, Department of Fininacal Institutions, DFI; in Wis, A1 connect Funk Media Streaming LLC. A-1 connections LLC; has never issued a License, or permission for use: I am not sure who, or how long the Defendent's have used my brand in their buisness, to

4

incluled all of their afiliates, who offer, Media Streaming Channels, or any mention of, Media Streaming. [Where:] My right's are being violated on, telecommunication's: Devices [What each did:] The Defendant: [Emerged.] them selfs into my intillectual Property, [When they violated my rights.], [I'm not sure when the, Defendents these violation's first started. This type o buisness violations, has caused me grate pain, and suffering. To incluled Lost income, for myself, and my buisness.

Id. at 3-4.

Plaintiff Tiajah Cureton's allegations are as follows:

Plaintiff: Tiajah Trevon Cureton: I am a musical producer, in the studios of A-1 connections LLC. The Streaming Plantform, and Brand, that holds all intellectual property in my works of the arts. I have never giving permission, to any other buisness, to impede, on any intellectual that belongs to my parent" company. My rights, were violated by defendents 1. Listed in this complaint. 2. The defendent merged themself's into my parent company A-1 connections brand. 3.) This has been ongoing for along time, I hav'nt no exact date. 4. This violation, happens on telecommunications devices, and Live: This has caused, pain, and suffering, to incluled: Lost Icome, for my self.

Id. at 5.

The plaintiffs marked the box on the complaint form reflecting that they are "suing for a violation of federal law under 28 U.S.C. §1331." Id. at 6. Under "Relief Wanted," the plaintiffs state that they want "to recover lost income, according to accounting principles," an "award of money for [their] pain and suffering," and for the "defendants, and there [sic] affiliate's to obtain a Licenes from A-1 connections LLC, to offer, and promote, Streaming Channels, with parent company A-1: LLC:" Id. at 6.

B.    Analysis

Under Federal Rule of Civil Procedure 8(a)(2), plaintiffs do not need to plead every fact supporting the alleged claims, but they do need to give the defendants fair notice of their claims against them and the grounds upon

which they rest. <u>Twombly</u>, 550 U.S. at 555 (quoting <u>Conley</u>, 355 U.S. at 47). The plaintiffs' complaint does not do this.

The plaintiffs allege that their "parent company," A1 Connections LLC,[1] creates "media streaming platforms," that its "brands are based on media streaming," and that it "holds all intellectual property in [plaintiff Tiajah Cureton's] works of the arts." Dkt. No. 1 at 3-5. The plaintiffs allege that the "defendants" (plural) "have used [Arthur Cureton's] brand in their business," dkt. no. 1 at 4; that the "defendant" (singular) has "emerged themselves into [Arthur Cureton's] intellectual property," <u>id.</u> at 4; and that the defendant (again, singular) "merged themselves into [Tiajah Cureton's] parent company A-1 connections brand," <u>id.</u> at 5. Although the plaintiffs assert that they have never given the defendants "permission" or a "license" to use their "intellectual property," the complaint does not explain *what* the plaintiffs' "intellectual property" actually is and what the plaintiffs mean when they say the defendant (or defendants) "emerged" or "merged themselves into" that property.

The complaint refers to a "trademark" that is registered with the Wisconsin Department of Financial Institutions. Dkt. No. 1 at 3. Perhaps the plaintiffs meant to claim that ABC Network, Disney, Apple Inc., and/or Hulu *infringed* (as opposed to "emerged" or "merged") on a trademark to which they hold the rights. The Wisconsin Department of Financial Institutions website confirms that Arthur Cureton currently is the registered agent of "A-1 Connections, LLC" (which was organized in March 2008 and currently is in good standing) and of "A1Connect Funk Media Streaming LLC" (which was organized in April 1999 as "Funk, LLC" and also is in good standing).

---

[1] The plaintiffs identify their co-plaintiff "parent company" as "A1 connection LLC" in the caption of the complaint, dkt. no. 1 at 1, and as "A-1 connections LLC" in the body of the complaint, <u>id.</u> at 3, 5.

6

https://www.wdfi.org/apps/corpsearch/search.aspx. But though the Wisconsin Department of Financial Institutions' online corporate records search makes certain information about Wisconsin businesses available to the public (legal entities' names, their registered agents, the effective dates on which the entities were registered with the Department of Financial Institutions, *etc.*), the website does not provide information about any trademarks associated with a particular legal entity. Id. The plaintiffs do not describe the nature of their alleged "trademarks" or whether those trademarks are registered with the United States Patent and Trademark Office. The plaintiffs also did not attach to their complaint proof that they have successfully registered any trademarks.

If the plaintiffs are attempting to state a claim for trademark infringement, the Lanham Act, 15 U.S.C. §§1051 *et seq.*, is the federal law that governs trademark infringement claims. To state a claim for trademark infringement, the plaintiffs must possess a validly registered trademark. Uncommon, LLC v. Spigen, Inc., 926 F.3d 409, 419 (7th Cir. 2019). Trademarks can be registered federally with the United States Patent and Trademark Office (USPTO) or the with a state—in Wisconsin's case, with Wisconsin's Department of Financial Institutions. A plaintiff need not register a trademark with the USPTO to state a claim for trademark infringement under the Lanham Act; a trademark registered with the Wisconsin Department of Financial Institutions "may still be enforceable under § 43(a) of the Lanham Act[.]" Matal v. Tam, 582 U.S. 218, 225 (2017) (citing Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992)).

If the plaintiffs *are* attempting to state a claim for trademark infringement (or copyright infringement or patent infringement), the court

needs more information. The plaintiffs need to explain whether they hold a registered trademark (or copyright or patent). They need to describe the mark that they believe the defendants have infringed (or the copyright or patent). They need to explain *why* they believe the defendants have infringed their mark or copyright or patent. Although the plaintiffs both say that they don't know exactly how long this has been going on, they should at least be able to give a ballpark—a year? Five years?

Perhaps the court has misunderstood, and the plaintiffs are not trying to allege trademark, copyright or patent infringement. Perhaps they are alleging some other kind of violation. If so, the plaintiffs can use their amended complaint to further explain their claims. How did the defendants "merge" or "emerge" themselves with the plaintiffs' brand, or intellectual property? How did the plaintiffs find out about this? How has the "merging" harmed them? There simply is not enough in the complaint to allow the court (or the defendants) to figure out what the plaintiffs believe the defendants have done to harm them.

There is another problem with the plaintiff's complaint—one that plaintiff Arthur Cureton appears to recognize. The individual plaintiffs—Arthur Cureton and Tiajah Cureton—are entitled by law to represent themselves in this lawsuit. 28 U.S.C. §1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."). But the plaintiffs also have named "A1 connection LLC"—a corporation—as a plaintiff. Even though he is the president of A1 connections LLC, Arthur Cureton cannot represent that corporation—a fact he admits in his motion to appoint counsel. "Corporations unlike human beings are not

8

permitted to litigate pro se." In re IFC Credit Corp., 663 F.3d 305, 318 (7th Cir. 2011) (citations omitted). "A corporation is not permitted to litigate in federal court unless it is represented by a lawyer licensed to practice in that court." United States v. Hagerman, 545 F.3d 579, 581 (7th Cir. 2008) (citations omitted). That is true even if the corporation is a limited liability corporation. Id. at 582. "[T]he right to conduct business in [the form of a limited liability corporation] carries with it obligations one of which is to hire a lawyer if you want to sue or defend on behalf of the entity." Id. at 581-82.

Arthur Cureton may represent himself, but he may not represent A1 Connections LLC. The corporation must be represented by a lawyer admitted to practice in the federal court for the Eastern District of Wisconsin. The corporation cannot file any documents in federal court unless it does so through an attorney licensed to practice in this court. If the individual plaintiffs want A1 Connections LLC to remain a plaintiff in the lawsuit, they must find a lawyer to represent the corporation. The court realizes that Arthur Cureton has explained that he does not have the money to hire a lawyer. In saying that the corporation cannot proceed in the lawsuit without a lawyer, the court is not disregarding or disrespecting the Curetons' financial straits. But there is no exception to the corporate representation rule for a corporation (or a corporate president) who does not have enough money to hire a lawyer.

The court will require the plaintiffs to file an amended complaint. The court will send the plaintiffs a blank amended complaint form. The plaintiffs must write the case number for this case—23-cv-551—on the first page of the amended complaint. The plaintiffs must list only Arthur and Tiajah Cureton as plaintiffs (unless they hire a lawyer for the corporation). The plaintiffs must use the space provided in Section B, "Statement of Claim," to explain in detail *what*

their "intellectual property" is—for example, do the plaintiffs hold a valid copyright, patent, and/or trademark, and, if so, what for? It is not enough for the plaintiffs to say that their property is a "streaming media platform" or that it is "works of art." If the plaintiffs hold a validly registered trademark—either with the USPTO or the Wisconsin Department of Financial Institutions—they must explain when they registered the mark and with which institution.

The plaintiffs also must explain specifically *how* and each defendant used or infringed on their intellectual property. Merely alleging that a defendant "violated [their rights] on telecommunications devices," "used [their] brand in their business," or "imped[ed] on [their] intellectual [property]" is not sufficient. The plaintiffs must explain what each defendant did, where they did it and approximately when they did it. If the amended complaint lacks these details, the court will be required to dismiss the case without prejudice.

## III.    Plaintiff's Motion to Appoint Counsel (Dkt. No. 3)

Plaintiff Arthur Cureton filed a motion to appoint counsel, explaining that he is not financially able to hire a lawyer and that he has "made multiple attempts to find an attorney on [his] own and [has] been unsuccessful." Dkt. No. 3. As the court has noted, he says that he is aware that as a non-lawyer, he cannot represent his limited liability company's interests in this court. Id.

In a civil case, the court has discretion to recruit a lawyer for individuals who cannot afford to hire one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for

these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Eagan v. Dempsey, 987 F.3d 667, 682 (7th Cir. 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654-55 (7th Cir. 2007)). And, given the scarcity of *pro bono* counsel resources, the court may also consider the merits of a plaintiff's claim and what is at stake. Watts v. Kidman, 42 F.4th 755, 763-64 (7th Cir. 2022).

To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Auth., 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." Eagan, 987 F.3d at 682. To meet that requirement, the plaintiff must contact at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

In particular, the lawyers' responses may have bearing on the court's decision to exercise its discretion because they may shed light on whether the plaintiff's attempts to hire counsel were reasonable. Pickett, 930 F.3d at 871. In deciding whether to recruit counsel, the court should consider the reasons the lawyer declined representation, including whether the plaintiff was unwilling (as opposed to unable) to pay a retainer; whether the lawyer lacked time or capacity to take on new clients; or whether the subject matter of the case requires a lawyer who specializes in a specific area of law. Id. The court

also should consider how well the plaintiff articulated the plaintiff's case to the prospective lawyer. Id. Where a plaintiff "conveyed [the plaintiff's] situation well and counsel deemed the claim feeble, then it would be inappropriate for a court to intervene" and recruit counsel. Id. But, where a plaintiff is inarticulate, then a court "may have a useful role to play in recruiting counsel." Id.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." Eagan, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490-491. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files the plaintiff's motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

Arthur Cureton has not satisfied the first prong. While he states that he has "made multiple attempts to find an attorney on [his] own and [has] been unsuccessful," he has not described the steps he took to find an attorney, or

12

advised the court of the responses of the lawyers he did contact. He has not, for instance, provided the court with the names and addresses of the lawyers he tried to contact, how and when he tried to contact them, or how (or if) the lawyers responded to his inquiries. Nor has he provided any documentation of his correspondence with those lawyers, such as copies of letters and emails he may have written them and the lawyers' responses, if they did in fact respond. Before the court tries to recruit counsel for Arthur Cureton, he first must contact at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

As the court has explained, Arthur Cureton is correct that, as a non-lawyer, he cannot represent his limited liability company's interests in federal court. But even if Arthur Cureton had satisfied the two-part inquiry necessary for the court to request counsel to represent *his* interests, the court could not recruit counsel to represent his *company's* interests. Courts have the authority to recruit attorneys to represent *people* who cannot afford counsel; they don't have the authority to recruit attorneys to represent *businesses* that cannot do so. 28 U.S.C. §1915(e)(1). If Arthur Cureton meets the first requirement to show that he tried, on his own, to find a lawyer to represent him, the court has the authority to recruit a lawyer to represent Arthur Cureton, but it cannot recruit an attorney represent the plaintiffs' company. Again, unless they obtain counsel between now and the time they file their amended complaint, the plaintiffs may not list their "parent company" as a co-plaintiff in the amended complaint. If the plaintiffs do not obtain counsel for the "parent company" by the date the amended complaint is due, the court must dismiss "A1 Connection LLC" without prejudice.

## IV.    Conclusion

The court **GRANTS** the plaintiffs' motions for leave to proceed without prepaying the filing fee. Dkt. No.  2, 7.

The court **ORDERS** that the plaintiffs must file an amended complaint that complies with the instructions in this order. The plaintiffs must file the amended complaint in time for the court to *receive* it by the end of the day on **June 7, 2024**. If the court does not receive an amended complaint (or a request for more time to file one) by the end of the day on June 7, 2024, the court may dismiss the case without further notice or hearing.

The court **DENIES WITHOUT PREJUDICE** plaintiff Arthur Cureton's motion to appoint counsel. Dkt. No. 3.

Dated in Milwaukee, Wisconsin this 31st day of March, 2024.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

14